E-FILED
Friday, 07 August, 2020  11:49:32 AM
Clerk, U.S. District Court, ILCD

**IN THE
UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION**

| | |
|---|---|
| AUSTIN J. BERTSCHY,<br>    Plaintiff, | |
| v. | Case No. 1:16-cv-01036-JEH |
| ZACHARY A. JANSSEN,<br>    Defendants. | |

**Order**

**I**

Now before the Court is the Defendant, Zachary A. Janssen's, motion for summary judgment, which the Court grants in part and denies in part for the reasons stated, *infra*. (D. 64).[1][2]

In the early morning hours of February 2, 2014, the Plaintiff, Austin Bertschy, and his friend, Jarod Lukehart, went to some bars in downtown Peoria.[3] Around 4:00 a.m. when the bars were closing, it was rowdy outside, people were yelling, and Mr. Bertschy walked out of a bar and onto the sidewalk. He then saw Officer Janssen sitting in his marked police car chatting with someone and overheard him say something about "ruining lives and DUI's." (D. 64-2 at ECF pp. 42-43).

Upon hearing this comment, Mr. Bertschy yelled, "Fuck you," (D. 64-2 at 43) and walked north-west, crossing Main Street, and turning right to travel north-

---

[1] The parties consented to a magistrate judge presiding over this matter. (D. 50-52).
[2] Citations to the docket are abbreviated as "(D. __ at ECF p. __)."
[3] The following facts are taken from the parties' statements of undisputed facts, responses thereto, and the exhibits attached to the motion for summary judgment and response.

1

east by crossing and continuing along Perry Street. (D. 64 at ECF p. 4). Officer Janssen eventually pulled his police car up next to Mr. Bertschy as he walked. According to Mr. Bertschy, the following exchange then occurred:

> The exchange with the officer at the time, which I now believe or now know to be Officer Janssen, said to me, "Excuse me? You said something back there?", in an upper tone as a question, and then said, "Fuck you?", and then proceeded to ask me for my ID, to which I asked him, "Am I being detained, and for what crime?", to which he asked -- asked for my ID. And I asked him a second time, "Am I being detained?" And he did not answer my question.

(D. 64-2 at ECF pp. 48-49).

Officer Janssen describes the encounter slightly differently as follows: "I -- as he was walking across Main Street onto Perry, I pulled up alongside him. I asked, "Is everything all right?" And told him to stop where he was. He continued to walk." (D. 64-1 at ECF p. 84). The officer also asked Mr. Bertschy for some identification, *Id.* at p. 98, to which Mr. Bertschy responded with, ""I don't have to give you anything. You're out of your jurisdiction." *Id.* at p. 99-100.

As Mr. Bertschy continued to walk away from Officer Janssen, Officer Janssen then got out of his car, approached Mr. Bertschy from behind, and, without saying anything more since the encounter while he was in his police car, made physical contact with Mr. Bertschy, resulting in Officer Janssen taking Mr. Bertschy to the ground, whereupon Mr. Bertschy's ankle was fractured.

Officer Janssen cited Mr. Bertschy with violating Peoria City Ordinance 15-75 for Noise on a Public way, which involves playing a radio too loudly, which Officer Janssen later claimed to be a mistake—he intending instead to cite Mr. Bertschy with violating Peoria City Ordinance 15-70 for yelling or shouting on a

public street.[4] Officer Janssen also issued Mr. Bertschy a notice to appear for obstructing/resisting a peace officer.

Ultimately, the State's Attorney charged Mr. Bertschy only with attempted resisting a peace officer, a Class A Misdemeanor. Mr. Bertschy eventually pleaded guilty to an Information on the attempted resisting a peace officer charge, that Information reading:

> [H]e with the intent to commit the offense of Resisting a Peace Officer in violation of 720 ILCS performed a substantial step toward the commission of that offense in that he did knowingly attempt to resist the performance of Zachary Janssen of an authorized act within his official capacity being the detention of Clyde Drexler, knowing him to be a peace officer engaged in the execution of his official duties in that he attempted to move his body in a manner that interfered with Zachary Janssen's ability to detain him.

(D. 64-4 at ECF p. 3).[5] Mr. Bertschy also duly paid his $250 fine for playing a radio too loudly on the street, notwithstanding the fact that, like Clyde Drexler, no radio was involved in the events on the evening in question.

## II

Based upon these events, Mr. Bertschy filed a Complaint alleging that Officer Janssen violated his civil rights as protected by 42 U.S.C. § 1983 by falsely arresting him and using excessive force while doing so. (D. 1 at ECF p. 4). Discovery now complete, Officer Janssen moves for summary judgment.

Officer Janssen first argues that the doctrine of collateral estoppel precludes Mr. Bertschy from arguing that he was falsely arrested, for his guilty plea to the Information entails an admission that Officer Janssen was performing "an

---

[4] https://library.municode.com/il/peoria/codes/code_of_ordinances?nodeId=CO_CH15HESA

[5] How Clyde Drexler got into the Information no one knows. (D. 64-1 at ECF pp. 94-95). Nothing in the record indicates that, Clyde Drexler, the NBA star a/k/a "Clyde the Glide," or any other person with that name was a participant in the events of February 2, 2014.

authorized act within his official capacity," to wit: arresting Mr. Bertschy based on probable cause. According to Officer Janssen, he at a minimum had reasonable suspicion to investigate why Mr. Bertschy yelled the expletive, and, when Mr. Bertschy refused to stop, he disobeyed a lawful order, creating probable cause for an arrest pursuant to 625 ILCS 5/11-203. In response, Mr. Bertschy argues that his guilty plea is not dispositive on the issue. Rather, the preclusive effect of a guilty plea on facts related thereto is not conclusive, but rather rebuttable, and the facts surrounding Mr. Bertschy's guilty plea demonstrate he pleaded guilty simply to get the incident behind him and avoid the cost of defending himself on the misdemeanor charge.

Officer Janssen next argues that his use of force was reasonable. He argues that because Mr. Bertschy continued to walk away from him after being told to stop and provide identification, he was entitled to use physical force to stop him, and the use of that force was reasonable under the circumstances. Mr. Bertschy disagrees, responding, among other things, that Officer Janssen's use of force was disproportionate to the alleged crime, if any. At a minimum, after getting out of the police car Officer Janssen should have issued a verbal command to Mr. Bertschy to stop before tackling him from behind without warning.

Finally, Officer Janssen argues that even if he fails on these arguments, he is entitled to qualified immunity.

### III

### A

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The moving party has the burden of providing proper documentary evidence to show the absence of a genuine issue of material fact. *Celotex Corp.*, 477

4

U.S. at 323-24. Once the moving party has met its burden, the opposing party must come forward with specific evidence, not mere allegations or denials of the pleadings, which demonstrates that there is a genuine issue for trial. *Gracia v. Volvo Europa Truck, N.V.*, 112 F.3d 291, 294 (7th Cir. 1997). "[A] party moving for summary judgment can prevail just by showing that the other party has no evidence on an issue on which that party has the burden of proof." *Brazinski v. Amoco Petroleum Additives Co.*, 6 F.3d 1176, 1183 (7th Cir. 1993).

**B**

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." Because arrests are "seizures" of "persons," they must be reasonable under the circumstances. *See Payton v. New York*, 445 U.S. 573, 585 (1980). A warrantless arrest is reasonable if the officer has probable cause to believe that the suspect committed a crime in the officer's presence. *Atwater v. Lago Vista*, 532 U.S. 318, 354 (2001).

> To determine whether an officer had probable cause for an arrest, "we examine the events leading up to the arrest, and then decide 'whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to' probable cause." *Maryland v. Pringle*, 540 U.S. 366, 371, 124 S. Ct. 795, 157 L.Ed.2d 769 (2003) (*quoting Ornelas v. United States*, 517 U.S. 690, 696, 116 S. Ct. 1657, 134 L.Ed.2d 911 (1996)). Because probable cause "deals with probabilities and depends on the totality of the circumstances," 540 U.S., at 371, 124 S. Ct. 795, it is "a fluid concept" that is "not readily, or even usefully, reduced to a neat set of legal rules," *Illinois v. Gates*, 462 U.S. 213, 232, 103 S. Ct. 2317, 76 L.Ed.2d 527 (1983). It "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *Id.*, at 243–244, n. 13, 103 S. Ct. 2317 (1983). Probable cause "is not a high bar." *Kaley v. United States*, 571 U.S. ––––, ––––, 134 S. Ct. 1090, 1103, 188 L.Ed.2d 46 (2014).

*District of Columbia v. Wesby*, ___ U.S. ___, 138 S. Ct. 577, 586 (2018).

5

"Probable cause is an absolute bar to a claim of false arrest asserted under the Fourth Amendment and section 1983." *Stokes v. Bd. of Educ. of City of Chi.*, 599 F.3d 617, 622 (7th Cir. 2010), citing *McBride v. Grice*, 576 F.3d 703, 707 (7th Cir. 2009) (affirming summary judgment for defendant police officer). Moreover, "[a]n arrest is constitutional if it is made with probable cause for an offense, even if the arresting officer's stated or subjective reason for the arrest was for a different offense." *Muhammad v. Pearson*, 900 F.3d 898, 908 (7th Cir. 2018), citing *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004).

Although the parties focus heavily on the preclusive effect of Mr. Bertschy's guilty plea, that plea is irrelevant if, ignoring his plea, the circumstances still support a finding of probable cause to arrest Mr. Bertschy. Specifically, Officer Janssen argues that probable cause existed to arrest Mr. Bertschy for violating Peoria City Ordinance 15-70.

That Ordinance provides:

No person shall yell, shout, hoot, whistle or sing on the public streets, particularly between the hours of 11:00 p.m. and 7:00 a.m. or at any time or place so as to annoy or disturb the quiet, comfort or repose of persons in any office, or in any dwelling, hotel or other type of residence, or of any persons in the vicinity.

https://library.municode.com/il/peoria/codes/code_of_ordinances?nodeId=CO_CH15HESA.

The undisputed facts demonstrate that Mr. Bertschy yelled or shouted the phrase "fuck you" between the hours of 11:00 p.m. and 7:00 a.m. while out on the sidewalk in downtown Peoria. Although the facts do not establish whether Mr. Bertschy's conduct annoyed or disturbed someone in an office, dwelling, hotel, or "any persons in the vicinity," a reasonable officer would at least have probable cause to believe it did given the hour and location of Mr. Bertschy. There is no

6

dispute that there were other persons "in the vicinity," including Officer Janssen. Thus, given that the facts establish that Mr. Bertschy's conduct unquestionably satisfied almost all of the elements for the violation, probable cause existed for an arrest for violating Peoria City Ordinance 15-70.

Even if probable cause did not exist for an arrest based upon that ordinance, there was at least reasonable suspicion to believe it had been violated, warranting a brief investigatory stop of Mr. Bertschy. An officer may briefly detain an individual based on a reasonable suspicion that criminal activity is afoot— something less than even probable cause. *See Terry v. Ohio*, 392 U.S. 1, 21-22 (1968). As part of that investigatory stop, an officer may constitutionally request that an individual identify himself. *See Hall v. City of Chi.*, 953 F.3d 945, 954 (2020) (holding that name checks of a reasonable duration performed when officers have reasonable suspicion of a violation of an ordinance do not run afoul of the Fourth Amendment). Thus, an officer would at least have reasonable suspicion to stop Mr. Bertschy for the ordinance violation and to ask him to identify himself. Mr. Bertschy's failure to either stop or identify himself then created probable cause to believe he committed the offense of failing to obey a lawful order pursuant to 625 ILCS 5/11-203, *i.e.* stopping and identifying himself.

Although Mr. Bertschy argues that Officer Janssen did not stop him for anything related to Ordinance 15-70, Officer Janssen not even managing to cite the correct ordinance on the citation, as already noted, "[a]n arrest is constitutional if it is made with probable cause for an offense, even if the arresting officer's stated or subjective reason for the arrest was for a different offense." *Muhammad v. Pearson*, 900 F.3d 898, 908 (7th Cir. 2018), *citing Devenpeck*, 543 U.S. at 153. Accordingly, regardless of what Officer Janssen's real motive or subjective intent was, facts that are certainly in dispute, it is not material to the question of whether or not probable cause existed for an arrest in an objective sense. As set forth*, supra*,

7

the undisputed material facts establish that probable cause to arrest existed for violating both Peoria City Ordinance 15-70 and 625 ILCS 5/11-203. Given this conclusion, the Court need not reach the collateral estoppel arguments raised by the parties, and Officer Janssen is entitled to summary judgment on Mr. Bertschy's unlawful arrest claim.

## C

Turning to the excessive force claim, an officer's use of force is unreasonable from a constitutional point of view only if, "judging from the totality of circumstances at the time of the arrest, the officer used greater force than was reasonably necessary to make the arrest." *Lester v. City of Chi.*, 830 F.2d 706, 713 (7th Cir. 1987). The reasonableness inquiry involves a "careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham v. Connor,* 490 U.S. 386, 396 (1989), 109 S. Ct. 1865 (internal quotation marks omitted). Courts must give "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* Courts must also bear in mind that "police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 396–97, 109 S. Ct. 1865. A factual inquiry into an excessive force claim "nearly always requires a jury to sift through disputed factual contentions, and to draw inferences therefrom...." *Abdullahi v. City of Madison,* 423 F.3d 763, 773 (7th Cir. 2005) (internal quotation marks omitted); *see also Gonzalez v. City of Elgin,* 578 F.3d 526, 539 (7th Cir. 2009).

The reasonableness of the force used by Officer Janssen is a question for the jury to decide in this case. For example, there is a question of fact regarding what, if any, crime Officer Janssen believed Mr. Bertschy committed.  Although the Court has concluded, *infra,* that probable cause *objectively* existed to arrest Mr. Bertschy, there is a dispute regarding for what offense Officer Janssen *subjectively* believed himself to be investigating or arresting Mr. Bertschy. Officer Janssen's subjective beliefs matter to the excessive force claim, if not to the false arrest claim, because the offense he *thinks* Mr. Bertschy may have committed is relevant in the weighing of the factors cited, *supra*; the amount of force an officer reasonably believes necessary to arrest a suspected terrorist is different from that necessary to arrest a suspected ordinance violator. Although Officer Janssen says he in fact stopped Mr. Bertschy because of a possible violation of Peoria Ordinance 15-70, he did not cite Mr. Bertschy with violating this ordi nance—indeed, the citation issued to Mr. Bertschy and to which he ultimately pleaded guilty was clearly unsupported by the facts given that playing a radio had nothing to do with the events of February 2, 2014. Mr. Bertschy argues that Officer Janssen's actions were motivated not by anything related to an ordinance violation, but instead by animus created by Mr. Bertschy uttering a profanity directed at him. It is for the jury to determine what actually happened, why, and what inferences to draw from the facts regarding how all this weighs into the reasonableness of the force used here.

Similarly, the facts and circumstances surrounding Mr. Bertschy's interaction with Officer Janssen are sufficiently in dispute to preclude summary judgment on the excessive force claim. Mr. Bertschy's and Officer Janssen's version of what was said and done during their encounter with each other at the police car differ regarding what was said and how many times. These facts are important,

because they relate to weighing the factor which addresses whether Mr. Bertschy reasonably believed he was free to go or was avoiding arrest.

Ultimately, a jury needs to sort out the material facts surrounding the encounter between Officer Janssen and Mr. Bertschy and, after doing so, decide whether the force Officer Janssen used under the facts and circumstances they find was reasonable.  Accordingly, there are material facts in dispute regarding Officer Janssen's use of force precluding a finding that the amount of force used was objectively reasonable, thereby precluding a grant of summary judgment on that basis.

## IV

Turning finally to the whether Officer Janssen is entitled to qualified immunity, "Qualified immunity attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (quoting *White v. Pauly*, 137 S. Ct. 548 (2017)). "In other words, immunity protects all but the plainly incompetent or those who knowingly violate the law." *Id.* The focus must be whether an officer had "fair notice" that conduct was unlawful. *Id.* That determination must be made in light of the specific case, and that specificity is particularly important in the context of the Fourth Amendment. *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015). It is the Plaintiff's burden to overcome an officer's claim of qualified immunity. *See id.*; To do so, a plaintiff must establish that: (i) his Fourth Amendment rights were violated; and (ii) the rights were "clearly established … in light of the specific context of the case." *Id.* These questions can be considered in either order. *Id.*

Where factual disputes exist, a defendant must adopt the *plaintiff's* version of the facts in asserting his right to be free from the excessive force inflicted on him was not sufficiently clear at the time the force was used.  *Estate of Heenan ex rel.*

*Heenan v. City of Madison*, 111 F. Supp. 3d 929, 947 (W.D. Wis. 2015), *citing Sallenger v. Oakes*, 473 F.3d 731, 742 (7th Cir. 2007). Doing so here precludes a finding that Officer Jansen is entitled to qualified immunity. According to Mr. Bertschy's version of events, Office Janssen did not tell him why he stopped him initially, refused to tell him whether or not he was being detained, never told Mr. Bertschy to stop after Office Janssen got out of his police car, and tackled Mr. Bertschy from behind without any verbal warning before tackling him. "It has long been established that an officer cannot, without warning or ordering a person to stop, use intermediate . . . force against a person who is suspected of only minor offenses, poses no immediate threat to the safety of the officer or others, and is not actively resisting arrest or attempting to evade arrest by flight." *Pekrun v. Puente*, 172 F. Supp. 3d 1039, 1049 (E.D. Wis. 2016), *citing Graham,* 490 U.S. at 396; *Abbott v. Sangamon County, Ill.,* 705 F.3d 706, 732 (7th Cir. 2019); *Payne v. Pauley*, 337 F.3d 767, 779 (7th Cir. 2003); *Clash v. Beatty*, 77 F.3d 1045, 1048 (7th Cir. 1996). Viewing the facts in the light most favorably to Mr. Bertschy, Officer Janssen is not entitled to qualified immunity.

V

For the reasons stated, *supra*, Officer Janssen's motion for summary judgment (D. 64) is granted on the unlawful arrest claim but denied on the excessive force claim and qualified immunity related thereto.

*It is so ordered.*

Entered: August 7, 2020

s/Jonathan E. Hawley
U.S. Magistrate Judge